UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

 Plaintiff,

v.

DAVID JAMES BLUER,

 Defendant.

Case No. 22-20557
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS [16] AND MOTION TO DISMISS [17]**

 In late 2022, David James Bluer was indicted on two counts of being a felon in possession of a firearm. (ECF No. 1.) In time, Bluer moved to suppress statements he made during two interviews with an FBI agent. (*See generally* ECF No. 16.) He also moved to dismiss the indictment, arguing that the felon-in-possession statute violates the Second Amendment of the United States Constitution. (*See generally* ECF No. 17 (citing *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)).) Both motions have been fully briefed, and the Court held a hearing on the motion to suppress on April 12, 2023.

 For the reasons that follow, the Court will deny both motions.

**I.**

 Start with the motion to suppress. (ECF No. 16.) While he was confined in the Macomb County Jail on an unrelated charge, Bluer was twice interviewed by an FBI

agent. Bluer alleges that he gave involuntary statements that should be suppressed.[1] (ECF No. 16, PageID.41.)  The Court disagrees.

## A.

The first interview took place on July 26, 2022. Bluer argues that his statements were involuntary because the agent told him that he was "not in trouble with him" despite the fact that the agent was conducting a criminal investigation and had executed search warrants at Bluer's family members' homes that morning. (ECF No. 16, PageID.41.) And Bluer alleges that the agent "contradicted" the *Miranda* warnings by saying "he was '**not** going to be getting [Bluer] a lawyer[.]'" (*Id.* (emphasis in original).)

> The interview was videotaped, and here is the full exchange:
>
> Agent: I'm Special Agent Jeremy Jaskulski with the FBI. *You're not in trouble with me.* But I've got to talk to you about some stuff—some questions. I know what you are in here [i.e., the Macomb County Jail] for right now. I have absolutely nothing to do with that. I'm not going to ask you anything about that. Talk to you about any of that. I don't want to know anything about that. That's not my concern. . . . But because you are here today, has anyone read you your rights before?
>
> Bluer: Yep.
>
> Agent: Your speaking to me would be completely voluntary. You don't have to talk to me at all. I just want to have a conversation about some things. I will read these to you, and you can tell me if you want to have a conversation or not?
>
> Bluer: Go ahead.

---

[1] The briefing suggests that the sufficiency of the *Miranda* warnings is also at issue. (*See* ECF No. 16, PageID.45; ECF No. 21, PageID.122–135 (sealed); ECF No. 26.) However, at the hearing, Bluer's counsel clarified that Bluer only argues that the statements were involuntary, which includes consideration of the *Miranda* warnings that were given.

2

(Video 1 at 00:00–01:04 (emphasis added).)

The agent then read Bluer the *Miranda* Advice of Rights form and provided some personal commentary:

> Agent: So, uh, before I ask you any questions today, you should understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before I ask you any questions. You have the right to have a lawyer with you during questioning. If you cannot afford a lawyer, you will be appointed one for—one will be appointed for to you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop answering questions at any time. *Again, because I am not arresting you and because you are not in trouble with me, I'm not going to be getting you a lawyer*, so if you don't want to talk, you just—
>
> Bluer: I get it. I know it. I get what you're doing. It's fine.
>
> Agent: So I put my name down here. If you are willing to talk right now, I just need you to sign that.
>
> Bluer: Sure. [*Signs*.]
>
> Agent: The reason I want to talk to you is—I think you can help me clear some stuff up.
>
> Bluer: That is what I am looking for. This is a whole bunch of bullshit. . . . This whole situation. Shoot away."

(*Id.* at 01:04–02:11 (emphasis added).)

The bottom of the Advice of Rights Form (which was read at the suppression hearing) said: "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present."

The agent then interviewed Bluer for about 45 minutes. The interview took place in a well-lit jail conference room behind an unlocked door with a window. (*See* Interview 1 video.) Bluer was unrestrained, and the conversation was casual

throughout. (*Id.*) Indeed, at one point, Bluer asked, "So, how do you like the FBI?" (*Id.* at 35:47.) Bluer was also comfortable enough to decline to provide the last name of a friend who had given him access to guns. (*Id.* at 27:31.) He ended the interview by saying, "I guess, just tell my mom I love her, I'm thinking about her, that I don't know what the hell is going on with all of that . . . So, that's what I'm leaving it at." (*Id.* at 47:47–48:05.)

Bluer was interviewed again two weeks later, and he was indicted two months after that. (*See* ECF Nos. 1, 16.)

At the suppression hearing, the agent explained that he said Bluer was "not in trouble" with him because the agent had neither an arrest warrant nor probable cause to arrest Bluer. And he explained that "I am not going to be getting [Bluer] a lawyer" only meant that he did not have a lawyer "waiting outside in the lobby" if he had wished to consult with one before proceeding that day. He said that he was "in the process of finishing this statement when Mr. Bluer interrupt[ed]" him. He was clear that, had Bluer requested to speak with a lawyer, he would have "thanked him for his time and left." The agent's testimony was credible.

## B.

Bluer argues that his statements at the first interview were involuntary because of the agent's "coercive" interrogation methods. (ECF No. 16, PageID.48.)

"Courts have long condemned the coercion of confessions." *United States v. Jacobs*, 63 F.4th 1055, 1058 (6th Cir. 2023) (citing *Miller v. Fenton*, 474 U.S. 104, 109 (1985)). But police action is "only coercive when it overbears the accused's will to

4

resist." *Id.* (cleaned up). The Sixth Circuit has established three requirements for finding that a confession was involuntarily given: (1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear the defendant's will; and (3) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement. *See United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999). To avoid suppression, the government must show by a preponderance of the evidence that the confession was voluntary. *Jacobs*, 63 F.4th at 1058.

Bluer argues that the agent's actions were objectively coercive. He says that the agent "volunteered" that Bluer "was not in any trouble" when the agent had, in fact, spent the morning executing search warrants at Bluer's family members' homes as part of an ongoing criminal investigation. (*See* ECF No. 16, PageID.46.) In addition, says Bluer, the agent implied that the only reason he read the *Miranda* warnings was because Bluer was incarcerated. (*Id.*) To top that off, after informing Bluer of his right to counsel, the agent told him, "I'm not going to be getting you a lawyer." (*Id.*)

As Bluer correctly points out, at least two courts have found coercion where an officer told a suspect that he was "not in trouble" or something similar. *See United States v. Giddins*, 858 F.3d 870, 884 (4th Cir. 2017); *Hart v. Att'y Gen. of State of Fla.*, 323 F.3d 884, 894 (11th Cir. 2003). But neither court found the statements coercive per se. Instead, they reached that conclusion only after considering them in their proper context. In *Giddens*, officers seized Gidden's car and refused to return it unless

5

he answered their questions. 858 F.3d at 881–83. After being taken to a locked interrogation room for questioning, Giddens twice asked if he was in trouble, and the officers said "no." *Id.* The Fourth Circuit concluded that his statements were involuntary because (1) the officers engaged in "economic coercion" by refusing to return the car, and (2) the officers "lied" to Giddens when they told him he was "not in trouble" when they had an arrest warrant for Giddens in their possession and planned to execute it. *Id.* at 884. Similarly, in *Hart*, the suspect had a "friend[ship]" with a specific officer and asked that officer for clarification of his right to counsel before his interrogation. 323 F.3d at 888. That officer told him that one of the "cons" of seeking counsel was that a lawyer would tell him not to answer incriminating questions. *Id.* at 889. And she told him that "honesty would not hurt him." *Id.* The Eleventh Circuit concluded that interrogation was coercive because of Hart's "trust" in the officer and because her statements "contradict[ed]" the *Miranda* warnings. *Id.* at 895.

In contrast, other courts have refused to find coercion where an officer told a suspect that he or she was "not in trouble" or something similar when considering the broader context of the interview. *See United States v. Crumpton*, 824 F.3d 593, 606 (6th Cir. 2016) (finding no coercion where officer answered "no" after a suspect asked him if "he would be going to court" because the officer later clarified that his statements could be used against him in court); *United States v. Male Juv. (95-CR-1074)*, 121 F.3d 34, 41 (2d Cir. 1997) (finding no coercion where officers "(1) inform[ed] [a juvenile] defendant and his mother that he was not in trouble, and (2) promis[ed]

6

defendant that he could return home that same night" because the context surrounding those statements made clear that he was in trouble); *United States v. Chee*, No. 2:05 CR 773, 2006 WL 2355837, at *5 (D. Utah Aug. 15, 2006), *aff'd on other grounds,* 514 F.3d 1106 (10th Cir. 2008) (finding no coercion where officer "deceived" suspect by saying he was "not in trouble" despite his being the primary suspect in a rape and by "falsely indicat[ing] that officers had recovered DNA evidence from the scene" when considering the totality of the circumstances).

This case falls somewhere in the middle. The Court is concerned by the agent's statements that Bluer was "not in trouble" and that he would "not be getting [him] a lawyer" despite Bluer being the target of a criminal investigation and having a constitutional right to counsel.

But "courts don't infer coercion lightly" and "must consider the totality of the circumstances surrounding alleged coercion, not hunt for words they find objectionable." *See United States v. Jacobs*, 63 F.4th 1055, 1060 (6th Cir. 2023). Here, the totality of the circumstances reduced the coercive effect of the statements to some degree. For one, unlike *Giddens* or *Hart*, there is no suggestion that the agent engaged in economic coercion, had a warrant for Bluer's arrest, abused a relationship of trust, or preyed on Bluer's ignorance of his rights.

For two, this is not a case where a *Miranda* warning was "flatly contradicted" by a subsequent statement. *See United States v. Crumpton*, 824 F.3d 593, 606 (6th Cir. 2016) (citing *Hart*, 323 F.3d at 888). Again, *Hart* found that the "phrase 'honesty will not hurt you' is simply not compatible with the phrase 'anything you say can be

7

used against you in court.'" 323 F.3d at 894. In contrast, "you are not in trouble with me"—while too narrowly interpreted by the agent—was neither a promise that Bluer's statements would not *get him into trouble* nor patently untrue given the agent's testimony about the lack of probable cause to arrest him. *Cf. United States v. Serlin*, 707 F.2d 953, 956 (7th Cir. 1983) ("Simple failure to inform defendant that he was the subject of the investigation, or that the investigation was criminal in nature, does not amount to affirmative deceit unless defendant inquired about the nature of the investigation and the agents' failure to respond was intended to mislead.").

And the agent's statement that he was "not going to be getting [Bluer] a lawyer," in context, did not suggest that Bluer had no right to counsel. The agent read Bluer the Advice of Rights form—which included the required warnings about his right to counsel. The agent told him at least four times that he could decline the interview. And Bluer interrupted the agent as he tried to explain what "I'm not going to be getting you a lawyer" meant, saying "I get it." After the challenged statements were made, the agent again clarified, "if you are willing to talk right now, I need you to sign" the Advice of Rights form. That form read: "I am willing to answer questions without a lawyer present." Bluer signed it. He never followed up and never asked for a lawyer. And the remainder of the interview suggests that Bluer understood his rights, as he declined to answer at least one question and terminated the interview of his own volition.

8

But the Court need not resolve that issue because—even assuming the agent's actions were objectively coercive—the video makes clear that Bluer's will was not overborne.

"Factors relevant to determining whether defendant's will was overborne include age, education, intelligence, awareness of rights, length of questioning, and use of physical punishments." *United States v. Ostrander*, 411 F.3d 684, 696 (6th Cir. 2005) (citing *United States v. Mahan*, 190 F.3d 416, 423 (6th Cir. 1999)). These factors all suggest that Bluer's statement in the first interview was given freely and of his own volition: he was 32 years old at the time of the interview; he appeared bright and articulate in the video; nothing in the record suggests that he lacked the education or intelligence to understand the Advice of Rights form; he had previously received *Miranda* warnings; the interview lasted a mere 48 minutes; and no physical punishments were threatened or used. *See Holland v. Rivard*, 800 F.3d 224, 241 (6th Cir. 2015) (finding that a suspect's will had not been overborne on similar—if not more concerning—facts). And there is more. "[T]he issuance of a *Miranda* warning makes it less likely that police conduct will overbear a suspect's will." *Jacobs*, 63 F.4th at 1059. As mentioned, Bluer declined to answer at least one of the agent's questions, "suggesting [that he] felt free when [he] answered those questions that [he] did." *See United States v. Rutherford*, 555 F.3d 190, 196 (6th Cir. 2009).

In sum, the video of the interview and evidence presented at Bluer's suppression hearing established that, after the agent advised Bluer of his *Miranda* rights, Bluer stated that he understood them and signed the form. Bluer agreed to

9

answer the agent's questions without first speaking to an attorney. There is little in the record to suggest that Bluer's will was overborne such that he was coerced into making the statements. *See United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002); *see also United States v. Gallegos*, No. CR 20-233, 2022 WL 2442597, at *6 (D. Minn. Feb. 23, 2022) (refusing to suppress statements under similar circumstances), *report and recommendation adopted,* No. CR 20-2333, 2022 WL 1799386 (D. Minn. June 2, 2022).

Accordingly, Bluer's statements were voluntary.[2] The motion to suppress will be denied. (ECF No. 16.)

## II.

Next consider the motion to dismiss the indictment. (ECF No. 17.)

Bluer argues that the felon-in-possession statute, 18 U.S.C. § 922(g)(1), violates the Second Amendment of the United States Constitution. Specifically, he contends that *New York State Rifle & Pistol Association, Inc. v. Bruen* directs that the Second Amendment presumptively protects Bluer's right to possess a firearm, making his prosecution unconstitutional. (ECF No. 17, PageID.59 (citing 142 S. Ct. 2111 (2022)).)

The Court does not write on a blank slate here. While one circuit is presently considering the issue with respect to a "non-violent" felon, *see Range v. Att'y Gen.*

---

[2] Because the first statement was voluntary, there is no basis to suppress the second statement. (*See* ECF No. 16, PageID.47 n.5 (arguing that the coercive nature of the first interview tainted the second interview, requiring the suppression of those statements as well).)

10

*United States of Am.*, 56 F.4th 992 (3d Cir. 2023), "after *Bruen*, no appellate court has held that § 922(g)(1) violates the Second Amendment," *see United States v. Hill*, No. 22-2400, 2023 WL 2810289, at *2 (7th Cir. Apr. 6, 2023). And the government cited over 100 district court opinions denying this very challenge to the constitutionality of § 922(g)(1). (*See* ECF No. 19, PageID.109–112.) So it appears that "[n]o court confronted with the same or similar facial challenge to the felon in possession statute . . . has found § 922(g)(1) unconstitutional and each has roundly rejected reading *Bruen* to obliterate—let alone obfuscate—the 'longstanding prohibitions on the possession of firearms by felons.'" *United States v. Riley*, — F. Supp. 3d —, No. 1:22-CR-163, 2022 WL 7610264, at *9 (E.D. Va. Oct. 13, 2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 26 (2008)) (collecting cases); *see also United States v. Gleaves*, — F. Supp. 3d —, No. 3:22-CR-00014, 2023 WL 1791866, at *1 (M.D. Tenn. Feb. 6, 2023) (noting that "every court to have considered the matter" has found § 922(g)(1) constitutional post-*Bruen*) (collecting cases).[3]

This unanimity is reflected by courts in this district. *See United States v. Smith*, No. 22-20351, 2023 WL 2215779 (E.D. Mich. Feb. 24, 2023) (Goldsmith, J.); *United States v. Ross*, No. 22-20049, ECF No. 34 (E.D. Mich. Feb. 15, 2023) (Murphy, J.); *Shelby-Journey-Egnis v. United States*, No. 2:21-20535, ECF. No. 53 (E.D. Mich.

---

[3] The Fifth Circuit upheld a facial challenge to a different part of 18 U.S.C. § 922(g), which bars individuals subject to domestic-violence orders from possessing firearms. *See United States v. Rahimi*, 61 F.4th 443, 461 (5th Cir. 2023) (concluding, post-*Bruen*, that "§ 922(g)(8)'s ban on possession of firearms is an "outlier[ ] that our ancestors would never have accepted.").

11

Dec. 5, 2022) (Lawson, J.); *United States v. Burrell*, No. 21-20395, 2022 WL 4096865, at *1 (E.D. Mich. Sept. 7, 2022) (Cleland, J.).

Bluer cites no cases reaching the opposite conclusion. (*See generally* ECF No. 17.)

The Court has read a great number of these opinions. And it has considered the Sixth Circuit's pre-*Bruen* jurisprudence regarding the constitutionality of § 922(g)(1). *See, e.g.*, *United States v. Goolsby*, No. 21-3087, 2022 WL 670137, at *2 (6th Cir. Mar. 7, 2022) ("[W]e have repeatedly found that prohibitions on felon possession of firearms do not violate the Second Amendment." (internal quotation marks omitted)); *United States v. Frazier*, 314 F. App'x 801, 807 (6th Cir. 2008) ("We have long held congressional regulation of firearms constitutional.") (collecting cases); *United States v. Napier*, 233 F.3d 394, 403 (6th Cir. 2000) (noting that "[e]very circuit court which has had occasion to address the issue has upheld § 922 generally against challenges under the Second Amendment"). Finally, the Court thoroughly reviewed the parties' arguments in this case. (ECF Nos. 17, 19.)

After this period of study, the Court agrees with the overwhelming consensus that *Bruen* is no barrier to a § 922(g)(1) prosecution. And in light of this overwhelming unanimity, the Court sees no reason to conduct an in-depth analysis of this issue. *See, e.g.*, *United States v. Smith*, No. 22-20351, 2023 WL 2215779 (E.D. Mich. Feb. 24, 2023).

Accordingly, the motion to dismiss the indictment will be denied. (ECF No. 17.)

## III.

For the foregoing reasons, Bluer's motion to suppress (ECF No. 16) and motion to dismiss (ECF No. 17) are DENIED.

SO ORDERED.

Dated: May 8, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
